IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GREATER GUIDE INC. D/B/A AMERICAN
SERVICE PETS,
*Plaintiff.*

v.

SAPS, LLC, PREVENT ESA FRAUD INC,
PREVENT ESA FRAUD,
DOMINICKLATINO III, AND,
JOHN DOE UNKNONWN INVESTIGATOR
*Defendants*.

CASE NO: <u>25-428</u>

SECTION: J (5)

JUDGE: CARL J BARBIER

MAGISTRATE: MICHAEL NORTH

JURY TRIAL REQUESTED

<u>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**</u>

Plaintiff, Greater Guide Inc. ("Greater Guide"), doing business as "American Service Pets",

by and through its attorneys, undersigned counsel, for its Complaint against Defendants SAPS

LLC, Prevent ESA Fraud, Inc., Prevent ESA Fraud, Dominick Latino III, and John Doe Unknown

Investigator,  alleges, based on personal knowledge as to its own actions and on information and

belief as to the actions of Defendants,, as follows:

<u>**PRELIMINARY STATEMENT**</u>

1. Plaintiff, Greater Guide, Inc., doing business as "American Service Pets," operates the website
   <u>www.AmericanServicePets.com</u> (referred herein to as the "ASP website"). Through the ASP
   website, Greater Guide offers access to licensed independent mental health professionals for
   those seeking certification for Emotional Service Animals ("ESA") and Psychiatric Service
   Animals ("PSA"), along with related products for owners of same.

2. Defendant SAPS LLC, doing business as "US Service Animals", operates the website,
   <u>www.usserviceanimals.org</u> (sometimes referred to herein as the "USSA website") and is a
   direct competitor to Plaintiff, Greater Guide and its business, "American Service Pets".

3. Defendants, Prevent ESA Fraud, Inc. (a Delaware nonprofit corporation) and "Prevent ESA Fraud" (a Louisiana nonprofit corporation), were both organized and founded by SAPS' attorney and Co-Defendant, Dominick Latino III (referred to as "Latino" or "Mr. Latino").

4. Defendant John Doe, (referred to as "Unknown Investigator"), working for and/or in concert with Mr. Latino and Defendants, intentionally participated in Defendants scheme to defraud and damage competitors, including Plaintiff, Greater Guide, Inc. and its business, "American Service Pets" ("ASP").

5. This is a complaint for damages and injunctive relief based on allegations that the Defendants devised and conducted a malicious and retaliatory campaign against "American Service Pets" via deceptive, fraudulent and illegal activities.

6. Through the use of fake identities and/or fabricated patient profiles, the Defendants infiltrated the Plaintiff's secure (256-bit encrypted) protected website (AmericanServicePets.com) over 31 times, submitted fake/fraudulent requests for medical/psycho evaluations, federally-regulated Emotional Support Animal (ESA) and/or Psychiatric Service Animal (PSA) certifications, and other ESA/PSA related services.

7. In addition, using their ill-motivated and fraudulently obtained access to the Plaintiff's website and network of licensed providers, the Defendants harvested and exploited the identities, contact information and sensitive (patient/provider) communication channels of dozens of medical/mental health providers which they then used to file a number of fake/manufactured and maliciously motivated regulatory "complaints" with several State (publicly-funded and operated) regulatory bodies and agencies. The "complaints" routinely relied upon the Defendants' own self-drafted 'Code of Conduct' while failing to disclose the true nature of their fake patient identity scheme, their fraudulent online activities or their ulterior motives (resulting in the waste and abuse of untold taxpayer resources and significant damage to the

2

reputations and business interests of a number of licensed medical/mental health providers in the process).

8.  Moreover, the Defendants' fraudulent activities and fictitious complaints have substantially reduced Plaintiff's capacity to provide services in at least five States across the United States, thereby diverting large number of customers from "American Service Pets" (to Defendant, SAPS, LLC) and severely damaged the Plaintiff's economic opportunities and business interests.

9.  As a result of the Defendants' concerted and ongoing efforts, SAPS, LLC now threatens to illegally monopolize the nationwide market for online ESA-PSA certification services, an effect which has caused (and will continue to cause) a negative effect on free competition and consumer choice along with irreparable harm to the Plaintiff legitimate and legal business interests.

10. Plaintiff asserts claims of civil conspiracy, fraud, breach of contract, Computer Fraud and Abuse Act, abuse of right, Louisiana Unfair Trade Practices Act, the Sherman Act, and Racketeer Influenced and Corrupt Organization ("RICO") Act based on that conduct.

11. In 2020, Defendant SAPS, represented by Mr. Latino, initiated a lawsuit in Louisiana state court against Plaintiff Greater Guide's predecessor Praxis Marketing, Inc ("Praxis Marketing") with the intent of damaging their competitor, Praxis Marketing. SAPS's lawsuit sought damages from Greater Guide for unfair trade practices in an attempt to impose the industry standards that Defendants unilaterally and fictitiously created. The lawsuit was dismissed for failing to state a cause of action, indicating the baselessness of the claims.

12. In response to the dismissal of Defendant SAPS' suit in State court, Defendants continued a previously formulated and enacted scheme to defraud and injure competitors, including Greater Guide. This scheme involved the unilateral creation and imposition of "industry

standards", the fabrication of fraudulent customer profiles on competitors' websites, wherein Unknown Investigator, at the behest of the enterprise formed by Defendants, submitted fraudulent medical evaluations through competitors' platforms to be submitted to licensed mental health professionals contracted with competitors. Utilizing the fraudulently obtained information, Defendants Prevent ESA Fraud, Inc. and Prevent ESA Fraud, signed by Mr. Latino, filed numerous Indiscriminate Complaints with various State regulatory boards against the licensed mental health professionals contracted with competitors. These complaints reiterated the same fictitious industry standards without regard to individual state law and sought to defame SAPS' competitors by falsely equating their competitors with scam operations. In knowingly submitting numerous nearly identical complaints across various state regulatory boards without consideration for the applicability of individual state laws, Defendants not only disregarded legal standards but also misused legal processes, constituting a clear abuse of right intended to maliciously damage competitors' professional reputation and business operations, including Plaintiff's. This scheme has been carried out against competitors other than Greater Guide in substantially the same means and methods, using an employee of SAPS to carry out fraudulent activities on behalf of Prevent ESA Fraud, constituting ongoing racketeering activities.

13. As a direct and proximate result of Defendants' actions, several of Greater Guide's licensed independent mental health professionals who received complaints initiated by Defendants have since terminated their contracts with Plaintiff, causing Greater Guide substantial monetary loss, reputational harm, and loss of business opportunities. This substantial injury to Greater Guide was Defendant SAPS' original intention, as expressed in their dismissed 2020 lawsuit. These intentionally malicious actions by Defendants in Louisiana, targeted at damaging a lawful business through deceit and a coordinated abuse of rights to file administrative complaints,

clearly falls outside the purview of legitimate business practices and constitutes racketeering activities and an unfair restraint of commerce prohibited by Louisiana and federal law.

14. Plaintiff seeks damages in an amount in excess of seventy-five thousand dollars ($75,000.00), permanent injunctive relief from Defendants' fraud, breach of contract, violations of the Computer Fraud and Abuse Act, with their business contracts, unfair trade practices, racketeering, anticompetitive business practices, the dissolution of Prevent ESA Fraud and Prevent ESA Fraud, Inc, or the revocation of nonprofit status, and treble damages and reasonable attorneys' fees pursuant to La. R.S. 51:1409(A), 15 US Code § 15, and 18 US Code § 1964.

15. Plaintiff has suffered and will continue to suffer irreparable harm in the absence of injunctive relief, as monetary damages alone are inadequate to remedy the ongoing loss of business relationships, business opportunities, and distortion of competition in the relevant market.

## JURISDICTION

16. This Court has original jurisdiction under 28 U.S.C. § 1331, as Plaintiff pleads under 18 U.S.C. § 1030 (Computer Fraud and Abuse Act), under § 18 U.S.C. §1961, et seq. (civil-RICO), and under §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1–2), with treble-damages and injunctive remedies supplied by §§ 4 and 16 of the Clayton Act (15 U.S.C. §§ 15–26). This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state-law claims which arise from the same transactions or occurrences and implicate the same questions of fact and related questions of law.

## VENUE

17. Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §1391 where the Defendants are subject to personal jurisdiction and are doing business, and where the acts complained of occurred or originated in such district.

**PARTIES**

18. Plaintiff, Greater Guide Inc., doing business as "American Service Pets", is a corporation incorporated in the State of Delaware with its principal place of business in Louisiana. Plaintiff offers access to licensed independent mental health professionals for those seeking certification for emotional service animals and accessory products for owners of emotional service animals.

19. Upon information and belief, Defendant SAPS, LLC ("SAPS") is a limited liability company formed under the laws of the State of Louisiana and does business in Covington, Louisiana and provides essentially the same services and products as Plaintiff.

20. Upon information and belief, Defendant Dominick Latino III is an individual domiciled and residing in Mandeville, Louisiana, who:

    a. Is a member of the Louisiana State Bar Association and an attorney/member of Column Law Firm LLC;

    b. Serves as president or director of Defendants, Prevent ESA Fraud, Inc (the Delaware entity) and Prevent ESA Fraud (the Louisiana entity); and

    c. Has held himself out, and did act, as counsel to:

        i. SAPS, LLC in the Louisiana State Court litigation, *SAPS, LLC v. Praxis Marketing Inc., No. 2020-0002008 (21st JDC, Parish of Tangipahoa, State of Louisiana)*.

        ii. Various fictitious patients/users/claimants that which entered into contracts for services with Plaintiff's business, "American Service Pets".

21. Upon information and belief, Defendant, Prevent ESA Fraud Inc. ("PEFI") is a nonprofit corporation that is incorporated in the State of Delaware and has its principal place of business in Rehoboth, Delaware.

22. Upon information and belief, Defendant, Prevent ESA Fraud (herein referred to as "PEF") is a nonprofit corporation that is incorporated in the State of Louisiana and has its principal place of business in Mandeville, Louisiana. Defendant names Dominick Latino III as its president and director in filings with the Louisiana Secretary of State and Column Law Firm LLC as its registered agent. PEF and Column Law Firm LLC also share the same suite address in the Mandeville office.

23. Upon information and belief, Defendant John Doe (the Unknown Investigator) is an individual employed or contracted by one or more of the Defendants, whose actions occurred within or were directed to the jurisdiction of this Court, and intentionally participated in and facilitated the execution of the Defendants' unlawful scheme to defraud, directly contributing to the damages suffered by the Plaintiff.

24. Upon information and belief, Defendant John Doe (the Unknown Investigator) is an individual employed or contracted by one or more Defendants, whose conduct occurred within or was directed toward this Court's jurisdiction, and who knowingly participated in and facilitated the Defendants' unlawful scheme to defraud, thereby directly contributing to harm and damages suffered by the Plaintiff.

## STATEMENT OF FACTS

25. Greater Guide Inc. ("Greater Guide") is a corporation incorporated in the State of Delaware in 2015 and is doing business as "American Service Pets". Greater Guide operates the website www.americanservicepets.com (herein referred to as the "ASP website") and its principal place of business in Hammond, Louisiana.

26. Through the ASP website, Greater Guide operates a platform that connects individuals seeking medical evaluation to validate the need for emotional support animals, which may be referred

to as an "ESA", and provides associated documentation; the ASP website also offers associated pet care products to their customers. Greater Guide maintains contractual relationships with independent mental health providers ("IMHPs") and serves as an intermediary, linking their potential customers with their contracted IMHPs.

27. The relevant market that Greater Guide and SAPS operate in is the online Emotional Support Animal (ESA) and Psychiatric Support Animal (PSA) certification service market, including the ESA-PSA certification keyword-based online advertising market through which providers acquire customers via social media and/or search-engine queries on Google, Bing, and similar search engines. Barriers to entry include costly investments in: (i) HIPAA-compliant tele-health infrastructure, (ii) a provider network, (iii) SEO acquisition costs, website/online technology, security, load-balancing maintenance costs. The geographic market of the ESA-PSA certification service market is comprised of a nationwide marketplace as Greater Guide and others provide services across the United States (the "Relevant Market").

28. To obtain evaluation services from Greater Guide's IMHPs, a potential patient must access the ASP website and answer a series of evaluation questions before being able to pre-qualify. Upon answering the qualification questions, the ASP website prompts the potential patient to provide their full legal name, email address, and zip code, and by pressing the button "Get Your ESA Letter" to proceed in the process, the potential patient agrees to the ASP website's Terms and Conditions. After agreeing to the ASP website's Terms and Conditions, the potential patient/consumer must then provide key information about their support animal as well provide answers to a series of medical/psycho health evaluation questions.

29. Upon answering all of the evaluation questions, the ASP website prompts the potential patient/consumer to enter and confirm their full legal name, billing address, and payment information in order to authorize the purchase of ESA/PSA services. Only after the potential

8

patient/consumer has successfully accepted the ASP website Terms and Conditions, verified their full legal name, residential address, billing address, successfully answered all evaluation questions and obtained a valid payment authorization does the ASP website allow the potential patient/consumer to submit their request for an ESA/PSA evaluation and certification through Greater Guide's computer system. Once completed, Greater Guide issues a patient identification number that unlocks the secure provider-queue API. Without the patient identification number, the patient/consumer cannot receive any services.

30. The ASP website's Terms and Conditions describe the above services and products sold through the website. The Terms and Conditions explain to customers that "[t]his [ASP website] does not provide any service by physicians or health services providers. All of the providers are independent of the Company".

31. Due to the website's goal of connecting customers with independent mental health professionals, the ASP website Terms and Conditions explicitly prohibit users from *"(a) using the Website for any unlawful purpose; […]" and "(c) submitting false information"* among other nefarious activities.

32. Further, the Terms and Conditions specify that users who register to use the services on the ASP website *"agree to provide complete, accurate and truthful information"* and are not "permitted to register under someone else's name". *See the ASP website Terms and Conditions attached hereto as "Exhibit 1".*

33. Defendant SAPS was incorporated as a Louisiana limited liability company in July of 2015 and is doing business as "US Service Animals". SAPS operates the website www.usserviceanimals.org (the "USSA website"). Through this website, SAPS solicits those searching to obtain certification of an emotional service animal and offers pet owner accessories associated with pets as emotional support animals.

34. Under information and belief, Defendant Prevent ESA Inc. (herein referred to as "Prevent ESA Fraud") was registered in Delaware as a Delaware nonprofit corporation under the name "Society for Prevention of Diagnostic Abuse" (herein referred to as "SPODA") in February of 2018. Sometime after 2018, SPODA changed its name to Prevent ESA Fraud. Under information and belief, Prevent ESA Fraud Inc. operates the website www.preventesafraud.com. The website lists its office address as 19266 Coastal Hwy, Unit 4-571, Rehoboth Beach, DE 19971. Under information and belief, neither SPODA nor Prevent ESA Fraud was or is registered as a nonprofit with the Internal Revenue Service.

35. Defendant Prevent ESA Fraud is a nonprofit corporation incorporated in the State of Louisiana in April of 2023. PEF lists its principal place of business at 5150 Hwy 22, Ste C8, Mandeville, LA 70471, with its registered agent as Column Law Firm LLC and its president and director is listed as Mr. Latino.  PEF, Column Law Firm, LLC, and Mr. Latino is registered with the State Secretary of State and Louisiana Bar Association as having their offices at 5150 Hwy 22, Ste C8, Mandeville, LA 70471.

36. Both Prevent ESA Fraud, Inc. and "Prevent ESA Fraud" claim to be "nonprofit" entities that enforce a set of self-drafted and suspiciously created industry standards under the guise of "fraud-prevention". Nevertheless, both publicly list Co-Defendant "US Service Animals" [SAPS] as their "industry benefactor".

37. SAPS, LLC provides ESA credentialing and pet accessories products throughout the United States and worldwide. Prevent ESA Fraud, PEF, Mr. Latino, and Unknown Investigator, coordinated with SAPS, promote a unilaterally created "industry standard" and files complaints to enforce those standards nationwide. SAPS, LLC, Prevent ESA Fraud, PEF, Mr. Latino, and Unknown Investigator are engaged in, and their activities substantially affect, interstate commerce.

## THE RICO ENTERPRISE AND PUBLIC DECEIT

38. SAPS, Prevent ESA Fraud, and Dominick Latino III are intimately connected, with Prevent ESA Fraud (supposedly a non-profit) outwardly operating primarily for the benefit of the (for-profit) SAPS and for SAPS to artificially aggrandize Prevent ESA Fraud in an attempt to deceive the public.

39. The USSA website listed Mr. Latino under the section of the website entitled "Meet Our Legal Team," stating that Mr. Latino "[f]ounded a national advocacy group to ensure that disabled people obtain quality mental health evaluations".

40. James Benson, a member and manager of SAPS, is also listed as being a member of US Service Animal's "Legal Team". The first clue that SAPS' intention is to deceive the public is that the USSA website operates on a ".org" top level domain extension, which is typically reserved for to designate qualified nonprofit organizations, despite the fact that both SAPS and the USSA website are overtly "for profit" and commercial in nature.

41. The connection between SAPS and Prevent ESA Fraud is evident from the beginning of Prevent ESA Fraud's inception. Within months of incorporating Prevent ESA Fraud (originally as SPODA) in Delaware, Mr. Latino, noted as SPODA's spokesperson, made a press release on their website and to other media agencies touting SAPS's US Service Animals as "the first online company to implement and pass SPODA's strict Code of Ethics and Conduct". To date, there is no public record of any other company announcing or mentioning that it has adopted or implemented Prevent ESA Fraud's "Code of Ethics and Conduct".

42. Further, the USSA website, under the menu button entitled "ESA Compliance" does not mention ESA Compliance but launches into Prevent ESA Fraud's "Code of Ethics and Conduct".

43. It is clear from the facts that this "Code of Ethics and Conduct" was unilaterally created by Prevent ESA Fraud with the aid of "[m]ental [h]ealth [p]ractitioners and practicing attorneys". Those "mental health practitioners and practicing attorneys" are not listed on the website or in any other literature that could be found on the internet. Research could not identify any other organization approving, confirming the tenants of, listing, or referencing Prevent ESA Fraud's "Code of Ethics and Conduct" as valid or being any type of industry standard.

44. According to Prevent ESA Fraud's website, SAPS' US Service Animals is the only entity "certified" by Prevent ESA Fraud for abiding by their unilaterally created "Code of Ethics". However, Prevent ESA Fraud's website suspiciously displays a "Membership Map" that shows many dots across the United States purporting to represent "members" of Prevent ESA Fraud.[1]



45. Prevent ESA Fraud has a Facebook page which asserts that it operates as a "***Lawyer & Law Firm***" (emphasis added) and at the time of filing has only 2 likes, 4 followers, and no activity since 2020, all of which further places the veracity of Prevent ESA Fraud's "Membership Map" and the true motives of Prevent ESA Fraud, SAPS and Mr. Latino in question.[2]

---

[1] See *Membership Map*, **Prevent ESA Fraud**, https://preventesafraud.com/membership-map/ (last visited June 17, 2025).

[2] See, *Prevent ESA Fraud*, **Facebook**, https://www.facebook.com/preventesafraud (last visited June 17, 2025).



46. SAPS and Prevent ESA Fraud are also linked since Prevent ESA Fraud lists US Service

Animals as their "industry benefactor" on their home page, stating that:

> *"Prevent ESA Fraud was founded by an industry leading law firm, Column Law Firm,*
> *LLC, tired of disreputable online companies with fake ESA letters and Mental Health*
> *Professionals not properly performing diagnoses.*
>
> ***Industry benefactor*** *- US Service Animals:*
>
> *"Our company spends an enormous amount of resources fielding the customer service*
> *complaints from these ESA letter mills (websites) who are nowhere to be found after*
> *you give them your money. We want to educate people about proper ESA consultations*
> *and stop people from being scammed."* - Matt Handal, founder of US Service
> Animals"[3]



47. The link between SAPS's "US Service Animals" and Prevent ESA Fraud has not gone

unnoticed by some in the emotional support animal space. One independent blogger who

reviews websites for emotional support animal certifications wrote an article entitled **"US**

---

[3] See *Prevent ESA Fraud*, https://preventesafraud.com/ (last visited June 17, 2025).

**Service Animals SCAM ALERT"** wherein the author connects SAPS and Prevent ESA Fraud and offers nefarious conclusions to those connections. [4]



48. In furtherance of attacking their competitors, SAPS LLC, represented by Mr. Latino and the Column Law Firm LLC, initiated legal proceedings against Praxis Marketing, Inc. (hereinafter referred to as "Praxis Marketing") (predecessor to Greater Guide Inc. d/b/a "American Service Pets"), filing a Petition for Damages for Unfair Trade Practices in August of 2020, *SAPS LLC v. Praxis Marketing, Inc.*, Case No. 2020-0002008 (21st JDC, Tangipahoa, La August 5, 2020) (the "Petition").

   *See the Petition attached here as "Exhibit 2".*

49. SAPS' petition alleged that Praxis Marketing engaged in unfair business practices by not adhering to the unilaterally and fictitiously created industry standards "Code of Ethics" that Prevent ESA Fraud expounded.   Further, SAPS alleged in the Petition ¶¶ 4–6 that: (i) it

---

[4] See *U.S. Service Animals Review – Scam?*, **ESA Reviews** (Apr. 30, 2021), https://esareviews.wordpress.com/2021/04/30/us-service-animals-review-scam/ (last visited June 17, 2025).

competes for "prime advertising positions" on Google and Bing by bidding on ESA-PSA related keywords; (ii) the highest bidders secure more clicks and thus more potential customers; (iii) firms with "lower overhead" can out-bid SAPS and "remain profitable"; and (iv) SAPS's own overhead is "significant" because it claims to follow "all appropriate standards and regulations" and employs "agents" to walk customers through the process. The lawsuit was dismissed for failing to state a cause of action, indicating the baselessness of the claims.

## THE SCHEME TO DEFRAUD

50. Agreement-in-fact. Plaintiff is informed and believes, and on that basis alleges, that SAPS LLC, Prevent ESA Fraud, Inc., Prevent ESA Fraud (La.), Dominick Latino III, and John Doe Unknown Investigator (the "SAPS-PEF Enterprise") intentionally agreed—no later than 21 January 2020 (for SAPS, Prevent ESA Fraud, Mr. Latino, and John Doe Unknown Investigator)—to implement a fictitious identity complaint scheme designed damage to exclude rivals from the Relevant Market. The agreement is evidenced by the following plus factors:

   a. Common control. Latino simultaneously managed Column Law (SAPS's outside counsel) and served as president or director of both Prevent ESA Fraud entities while acting for SAPS, and Cody Oelker worked as independent contractor to SAPS and as an "investigator" to Prevent ESA Fraud;

   b. Shared implementation tools. Every fake-profile purchase made through the ASP website used a combination of the same credit cards and IP blocks registered to Slidell/Mandeville (Ex. A-1), proving centralized operational coordination;

c. <u>Uniform complaint template</u>. Each board filing cited Defendants' privately drafted "Code of Conduct & Ethics," cited no state statute, and bore Latino's signature or Prevent ESA Fraud letterhead, demonstrating a common script rather than independent grievance filing;

d. <u>Sequential market targeting</u>. Defendants deployed the scheme in Texas, Arizona, Washington, Louisiana, Florida, and California —which are large revenue pools for online ESA-PSA certification services—before moving to smaller states, reflecting a coordinated allocation of territories;

e. <u>Cease-and-desist notice ignored</u>. As discussed below, Greater Guide delivered a Cease-and-Desist letter to SAPS in November of 2023, expressly warning that their conduct was unlawful. Defendants nevertheless executed twenty-five additional incursions into Greater Guide's platform. Continued conduct after notice is classic evidence of conspiratorial willfulness;

51. Defendants' first known fake-profile complaint was lodged on January 21, 2020—seven months *before* SAPS filed the Petition against Praxis Marketing, Inc, showing SAPS was aware it was losing online traffic to lower-cost rivals such as Greater Guide and its predecessor, providing a clear anticompetitive motive for the fictitious identity complaint campaign. When SAPS later lost its lawsuit to Praxis Marketing in January of 2021, Defendants faced a choice: pursue open, good-faith complaints or lobbying of state regulators, or double-down on deception. SAPS-PEF Enterprise chose the latter—intensifying their covert program of inventing "patients," harvesting competitors' provider data, and filing boiler-plate Code-of-Conduct complaints. Because no bona-fide grievances existed, the fabricated complaints would harm rivals even if every board ultimately dismissed them, thereby serving Defendants' anti-competitive objective while masking it as consumer protection.

52. <u>Dual-track scheme</u>. In an effort to interrupt competitors' business operations and to cause harm, Defendants created a scheme to defraud competitors which included two phases: (1) platform infiltration and fraudulent transactions; and (2) filing of indiscriminate, baseless complaints. First, Defendants created and promoted their unilaterally created and self-serving "industry standards", to wit an "investigator" creating fake, fraudulent customer accounts on their competitors' websites would submit false medical evaluation requests to their competitors' mental health professionals posing as a patient in search of ESA/PSA credentialing. To implement each fake-profile transaction, Defendants first generate a fictitious identity, including a newly created email account, and then search home listing sites for residences in the target state that are currently for sale. Defendants then use this fraudulent information to infiltrate competitor websites. Defendants insert this real street address into the ASP website intake form concealing the deception from ASP website's routine address-validation check. By creating a profile using a fraudulent identity, fraudulent address, and credit card information, Defendants bypass regular authentication systems of their victims.

53. The results of the fraudulent submissions provide the enterprise with a patient identification number and, upon services being rendered, the name of the competitor's licensed mental health professional and allow Defendants to manipulate the system to create an environment to facilitate a complaint against competitors' mental health provider. These infiltration actions were intended to and did undermine Plaintiff's credibility, misappropriate internal business structures, and cause direct financial and reputational injury to Plaintiff's business, regardless of whether such acts later culminated in state regulatory complaints.

54. Second, using information obtained through these fraudulent submissions, the SAPS-PEF Enterprise filed complaints with State licensing boards against those mental health professionals accessed through their competitors' websites (referred cumulatively as "the

Complaint Letters"). The Complaint Letters list the name of the fraudulently created account and customer, an "alias", and then, predictably, without reference to local law or regulation, expounds on the unilaterally created industry standards advertised on Prevent ESA Fraud's website and why the mental health provider should be disciplined. Mr. Latino, who served as SAPS LLC's counsel in the 2020-2021 litigation against Praxis Marketing, directs Prevent ESA Fraud's campaign against SAPS competitors, as evidenced by his signature on multiple complaint letters submitted by Defendants Prevent ESA Fraud and PEF against Greater Guide's contracted independent healthcare providers. In several of the complaint letters, Mr. Latino admits that Prevent ESA Fraud and PEF created fake profiles on the ASP website in order to illicit responses that Defendants could then use in filing the Complaint Letters with the intent of harming Plaintiff. Both Prevent ESA Fraud and PEF have filed complaints with multiple State regulatory boards against Greater Guide mental health providers in furtherance of Defendants' scheme.

55. "Indiscriminate Complaints." As used herein, the term "indiscriminate complaints" means complaints that rely solely on Defendants' privately drafted "Code of Conduct & Ethics" and may only reference state law or laws of other states.

## EXECUTING THE SCHEME TO DEFRAUD

56. Beginning in January of 2020, the SAPS-PEF enterprise agreed to eliminate Greater Guide and other competitors from the online ESA-PSA certification market. To that end:

    a. Latino simultaneously controlled Prevent ESA Fraud and worked as outside counsel to SAPS, LLC at least as early as August 2020;

    b. Cody Oelker worked simultaneously as an independent contractor to SAPS and as an "investigator" to Prevent ESA Fraud;

c.  the SAPS-PEF Enterprise executed thirty-one (31) fake-profile incursions into the ASP website using a handful of the same credit cards and IP blocks from Slidell, Louisiana and Mandeville, Louisiana; and

d.  The initial targets were the large revenue states (Texas, Arizona, Washington, Louisiana, California, and Florida).

57. The first known instance of Defendants acting on their scheme to defraud competitors known to Plaintiff occurred on January 21, 2020, when Cody Oelker, a former employee of SAPS and independent contractor to SAPS at the time of the incident, later purporting to be an "investigator" for Prevent ESA Fraud, accessed the Animal Access website and fraudulently submitted an evaluation request as "Roberta Nicole" of Amherst, New Hampshire. Animal Access' mental health provider relied on fraudulent information in providing services to "Roberta Nicole".  Mr. Oelker would later tell the New Hampshire Board of Mental Health Practice that he was an unpaid "investigator" for Prevent ESA Fraud. On February 10, 2020, the New Hampshire Board of Mental Health Practice received a complaint letter from Mr. Dominick Latino as director of Prevent ESA Fraud, stating that Prevent ESA Fraud was filing a complaint against Animal Access's mental health provider.  The New Hampshire Board of Mental Health Providers formally reprimanded the mental health provider who unwittingly received the fraudulent "Roberta Nicole" evaluation from Cody Oelker's, SAPS's independent contractor. *See "Complaint" in SAPS, LLC v. Cody Oelker, Case 2:23-cv-00299-SM-JVM (E.D.La January 23, 2023) attached hereto as "Exhibit 3" wherein SAPS, LLC states to this court that Cody Oelker was a previous employee and independent contract at the relevant times referenced in the instant matter.*

58. Greater Guide alone has been able to link approximately thirty-one fraudulent accounts to Defendants scheme between January 2023 and December 2024. In each of the approximately thirty-one instances, Defendants':

    a. Created fraudulent customer profiles using fictitious names and addresses;

    b. falsely agreed to the ASP website's Terms and Conditions;

    c. Entered falsified billing information to simulate legitimate transactions;

    d. sent unauthorized commands to Plaintiffs' computers and concealing the commands as legitimate network traffic; and

    e. Submitted fraudulent medical evaluations through Plaintiffs' system to induce mental health providers into providing services under false pretenses.

59. Cross-referencing the information gathered from the complaints filed by Defendants, Greater Guide found that Defendants use the same credit card information to submit false evaluation requests through Greater Guide's platform. Similar internet protocol addresses (herein "IP address(es)") are used to submit these fraudulent profiles and are traced to Mandeville, Louisiana and Slidell, Louisiana, despite claiming to be customers from various locations across the United States. Further, the addresses of the fraudulent alias profiles are often residential addresses that are or were recently on the market for sale. Attached as "Exhibit 4" is a detailed listing of the specific time, place, contents, and alleged identity of persons to whom and by whom the alleged fraudulent submissions were made through Greater Guide's website to mental health providers by the Defendants.[5]

60. Phase One of the SAPS-PEF Enterprise's scheme involved the use of wire fraud and unauthorized access to fraudulently obtain valuable operational information—such as patient

[5] Full names have been redacted in an abundance of caution in conformity with HIPAA and confidentiality laws (in case ANY of the 31 potential consumer/patients turn out to be real.

20

ID numbers, IMHP names and licenses—through Greater Guide's computer systems under false pretenses and fraudulent transactions.

61. This conduct, repeated at least thirty-one (31) times, caused actionable harm to Plaintiff in the form of misallocated resources, internal investigation costs, fraudulent transactions, expenses incurred to resecure the system, lost sales, and reputational damage within Plaintiff's IMHP network.

62. These acts, both individually and collectively, proximately caused injury to Plaintiff's business and constitute a pattern of racketeering activity, which is independently actionable.

63. Since cross-referencing Defendants' IP addresses and credit card information, Greater Guide has implemented affirmative measures to block Defendants' suspected attacks—an ongoing task that demands considerable vigilance and costs.

64. In furtherance of the fraudulent scheme, SAPS-PEF Enterprise submitted regulatory complaints against Greater Guide affiliated IMHPs using form letters signed by Defendant, Dominick Latino III, on behalf of Prevent ESA Fraud Inc. (and/or its Louisiana counterpart PEF), which were based entirely on fake or fraudulent consumer/patient interactions with ASP's systems and providers.

65. Each letter claimed to report ethical violations under Prevent ESA Fraud's self-authored "Code of Conduct," and notably NOT under the relevant state's actual laws or professional regulations and the letters uniformly omitted the fact that the supposed complainant was either a fake person contrived by or in some way associated with a (for-profit) marketplace competitor, namely SAPS, LLC (and its intertwined affiliates).

66. To the best of Plaintiff's knowledge and belief, the complaints were transmitted via regular U.S. mail and were part of a calculated pattern to deceive regulatory boards into opening investigations under false pretenses, thereby causing reputational and business injury to

Greater Guide, its provider network, and other competitors in the Relevant Market. Attached as "Exhibit 5" is a detailed listing of complaints and details (by alias, date, target provider, and jurisdiction) which have become available and/or known to the Plaintiff as of the time of this filing.

67. On or about April 24, 2023, Greater Guide was informed that their IMHP in Louisiana had a regulatory board complaint filed against her by Mr. Latino relying on information gathered by an unknown "investigator" who had created a fake account on the ASP website to create the environment of the complaint. This mental health provider terminated their contract with Greater Guide due to complaints from Defendants.

68. On or about August 30, 2023, the Washington State Examining Board of Psychology informed Greater Guide's Washington State mental health provider that Prevent ESA Fraud had filed a complaint against Plaintiff's IMHP, Dr. John Neer, after Prevent ESA Fraud's "investigator" submitted fake information under the name "Chloe Andrews".  Dr. Neer attempted to phone "Chloe Andrews"; the call was unanswered, and he was unable to reach the fictitious patient. This mental health provider terminated their Washington State contract with Greater Guide due to the complaint made by Defendants. Following Prevent ESA Fraud's complaint; the Washington Board accepted a Stipulated Consent Order.

69. Upon information and belief, on or about October 24, 2023, the New York State Education Department ("NYSED") contacted Greater Guide's IMHP in New York, Dr. Diana Bruno, informing the mental health provider that a complaint had been made by an out of state investigator of ESA-PSA certification letters. Under information and belief, Plaintiff contends that that this "complaint" was originated by Latino and SAPS-PEF Enterprise. After the initial investigation, no action was taken by NYSED.

22

70. Then, on or about May 27, 2025, Dr. Burno contacted Greater Guide concerning another complaint that had been filed against her by the same out of state entity believed to be Mr. Latino and SAPS-PEF Enterprise. Thereafter, the NYSED conducted *another* investigation into Dr. Bruno's practice. The NYSED dismissed all substantive ESA allegations but issued a reprimand concerning inadequate tele-health consent language. Dr. Bruno subsequently terminated her contract with Greater Guide due to the nuisance and aggravation brought on by the manufactured complaints.

71. <u>Cease-and-Desist Letter</u>. On November 14, 2023 Greater Guide, through counsel, served SAPS LLC and its manager James Benson with a written cease-and-desist letter that (i) identified the fake-profile/doctor-harassment scheme, (ii) labeled the conduct "unlawful unfair trade practices," and (iii) demanded that SAPS "cease and desist from this unlawful conduct" or face suit.

72. Despite this explicit notice, Defendants still initiated multiple ill-motivated and fraudulent incursions of the ASP website between November 2023 and December 2024.

73. On or about November 15, 2023, the Texas Behavioral Health Executive Council ("BHEC") contacted Greater Guide's IMHP in Texas, Dr. Juliana Duncan, informing the mental health provider that a Dominick Latino III of Prevent ESA Fraud had filed a complaint as an "Attorney representing client" "Aja Sims". The complaint letter for "Aja Sims" states that an "investigator" had created and submitted fake information using the alias "Aja Sims" to obtain the information required to file the complaint. This mental health provider was forced to terminate her contract with Greater Guide.

74. On or about August 7, 2024, the Arizona Board of Psychologist Examiners informed Arizona mental health provider Dr. Golnaz Hansen that Dominick Latino of Prevent ESA Fraud had filed a complaint with the Arizona Board of Psychologist Examiners after a Prevent ESA Fraud

"investigator" submitted fraudulent information through the ASP website to create the pretext for the complaint against Dr. Hansen. Dr. Hansen subsequently terminated her contract with Greater Guide citing Prevent ESA Fraud's complaint.

75. In several instances as noted above, attorney Dominick Latino III declares to State regulatory agencies that he, Mr. Latino, is the legal representative of these nonexistent, fictitious individuals to further the scheme against Greater Guide.

76. On or about September 19, 2024, the Arizona Board of Psychologist Examiners informed the mental health provider Bethany Young that Dominick Latino of Prevent ESA Fraud had filed a complaint with the Arizona Board of Psychologist Examiners after a Prevent ESA Fraud "investigator" submitted fraudulent information to through the ASP website to create the pretext for the complaint. Dr. Young subsequently terminated her contract with Greater Guide due to Prevent ESA Fraud's complaint.

77. On December 19, 2024, yet another Cease-and-Desist letter was sent to the Defendants as a result of the Defendants brazenly continuing their illegal activities and the continuation of the SAPS-PEF Enterprise scheme.

78. On or about January 13, 2025, the **California Department of Consumer Affairs (CADCA)** served Greater Guide's office with a subpoena requesting information related to a purported patient identified as "Kimberly B". The investigation was initiated by the California Board of Psychology following a complaint allegedly filed with the Board on or about May 7, 2024, and transferred to the CADCA for investigation. Subsequently, Greater Guide received an "Authorization for Release of Information" on CADCA letterhead, which purported to authorize the disclosure of sensitive medical records concerning "Kimberly B."

79. The form listed a handwritten patient ID of 1751959, and **identified the legal representative as "Dominick Latino"**, handwritten, signed in that same name and dated "01/28/2025", purportedly **acting as the "Attorney" of "Kimberly B"**.

80. Through its ongoing investigation, Greater Guide has determined that "Kimberly B" was in fact not a real person, but rather a totally fictitious identity created by Defendants and used in a staged transaction as part of their broader deceptive and fraudulent scheme described herein. *See the above referenced "Authorization of Release of Information", attached as "Exhibit 6".*

81. On or about February 10, 2025, CADCA served Greater Guide with another subpoena requesting information related to a purported consumer/patient identified as "Kay H." The investigation was initiated by the California Board of Psychology following a "complaint" allegedly filed with the Board on or about September 18, 2024, and transferred to the CADCA for investigation. Subsequently, Greater Guide received an "Authorization for Release of Information" on CADCA letterhead, which purported to authorize the disclosure of sensitive medical records concerning "Kay H."

82. The form listed a handwritten patient ID of 1908465, and (yet again) identified **the legal representative as "Dominick Latino"**, handwritten, signed in that same name and dated "02/07/2025", **purportedly acting as the "Attorney" of "Kay H."**.

83. Through its ongoing investigation, Greater Guide determined that "Kay H." was in fact not a real person, but rather a totally fictitious identity created by Defendants and used in a staged transaction as part of their broader deceptive and fraudulent scheme described herein. *See the above referenced "Authorization of Release of Information", attached as "Exhibit 7".*

84. On or about March 3, 2025, the Division of Professional Licensing for the State of Utah ("DPL") served Greater Guide's office with a subpoena requesting information related to an investigation into the IMHP Michael Salvatore IV ("Salvatore") instigated from a complaint

by Prevent ESA Fraud. The DPL subpoenaed all documents kept by Greater Guide concerning Salvatore, incurring substantial costs to Plaintiff in order to comply with the investigation. There has been no known conclusion to the investigation at this time.

85. Consistently, the state licensing boards to which Defendants mail their "complaints"—*e.g., the Arizona Board of Psychologist Examiners, the Texas Behavioral Health Executive Council, etc.*—initially review the fake "complaints" on an *ex parte* paper basis completely out of Plaintiff's view. Greater Guide has no ability or access to see or rebut the allegations, but in many instances receives requests for documents in these matters, creating an administrative burden on Greater Guide's staff, operations and thus causing additional damages.

86. Moreover, these state licensing boards have no power beyond the professionals they regulate, which allows third parties to act with impunity in submitting unverified and/or unfounded complaints, seemingly predicated on fraudulent transactions, fake identities and/or false statements with no recourse.

87. By the Defendants knowingly submitting "patient" complaints utilizing sensitive information/files obtained through fraudulent transactions and a boilerplate self-authored "Code of Conduct" crates an untenable and unfair process of allegations before closed-off forums meaning Greater Guide is detrimentally denied any meaningful due process or access to these adjudicatory proceedings.

88. The Defendants' fabricated complaints to State agencies, including the misrepresentation of representing fictitious persons, harms the governmental agency by diverting its limited resources away from legitimate regulatory oversight and enforcement, thereby undermining the agency's ability to effectively protect public interests and maintain the integrity of its investigative processes.

89. These illegal Indiscriminate Complaints (which are not grounded in any State/Local laws or regulations, but instead merely upon the Defendants' own self-serving and unilaterally authored "Code of Conduct") have caused a number of the Plaintiff's contracted several mental health professionals to terminate their contracts with Greater Guide, causing significant injury and interruption to Greater Guide's business operations.

90. Moreover, the resignations of Greater Guide's independent mental health providers in the large States where Defendants have chosen to target their fake complaints have caused Greater Guide to cease or drastically reduce operations in those States, causing Plaintiff to incur ongoing consequential damages, lost revenue and unplanned expenses to attract and train new IMHPs on Greater Guide software, resources, and the like for those jurisdictions.

91. Starting on or about March 1, 2023, Greater Guide began to incur business costs from being forced to respond to the SAPS-PEF Enterprise's intrusions into the ASP website, including but not limited to costs associated with identifying and responding to fraudulent activity, enhancing domain and website security measures, staffing costs, and addressing harm to business operations.

92. The coordinated actions between SAPS LLC, Prevent ESA Fraud, PEF, Dominick Latino III, and Unknown Investigator(s) demonstrate an ongoing, deliberate scheme to interfere with competitors' business relationships and operations, utilizing Prevent ESA Fraud's purported nonprofit status as a front to advance SAPS LLC's commercial interests. These actions have caused substantial harm to Greater Guide's business operations through required mediation actions and the systematic targeting and disruption of its relationships with contracted mental health professionals.

## HARM TO COMPETITION

93. As a direct consequence of the Defendants' fraudulent and anticompetitive activities, including the creation of fictitious industry standards, fraud, and the abuse of regulatory processes, competition within the emotional support animal certification market has been distorted. Defendants SAPS LLC, along with Prevent ESA Fraud Inc. and PEF, manipulated market conditions by undermining legitimate service providers through regulatory complaints based on fraudulently obtained information and forced integration of their self-serving standards. This scheme allowed SAPS LLC to illegitimately seize market share and exert control over pricing and service terms detrimental to consumer choice and market fairness.

94. The orchestration of Indiscriminate Complaints against competitors affiliated mental health providers has discouraged these providers from participating in the market, thereby reducing the number of available providers, raising the barriers to entry, and enabling Defendants to control pricing and service terms to the detriment of consumers and competitors. Defendants' actions reduced the incentives for service innovation and quality improvements, as competitors are forced to divert resources to defend against fraudulently based computer attacks and regulatory challenges instead of enhancing service integration and customer experience.

95. Specifically, Defendants' fake complaint campaign has caused Greater Guide's **IMHP network in the States of Texas, Arizona, Washington, Louisiana, and California to collapse** in capacity, effectively to zero in some states, foreclosing consumer choice and diverting ESA-PSA certification sales to Defendant, SAPS, LLC.

96. With fewer competitive options, thousands of ***actual*** consumers/patients in each of these States now have fewer choices and most likely face SAPS's higher advertised fees compared with that of Greater Guide's, amounting to illegal harm and suppression of competition, not just to Greater Guide, but the the ESA-PSA certification market generally.

97. Further, SAPS's website now appears in the top three organic Google results for nearly all relevant ESA-PSA search terms nationwide, an obvious indication of their ill-gotten increase in web search dominance and online traffic-share metrics.

98. Considering all of the foregoing, the overarching purpose and effect of Defendants' conduct has been to unfairly eliminate competition by maliciously forcing out (or severally injuring) other market players, reallocate significant market share to themselves, benefit from higher prices, and ultimately gain significant unfair economic advantages.

## COUNT I – CIVIL CONSPIRACY

99. Plaintiff repeats and realleges the foregoing as if fully set forth herein.

100.    Under the La. C.C. Art. 2324, he who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act.

101.    The Defendants, SAPS, Prevent ESA Fraud Inc, PEF, Dominick Latino III, John Doe, and other unnamed co-conspirators entered into a calculated scheme, a meeting of the minds, to deliberately harm Plaintiff by fabricating false customer profiles, submitting false medical records, and presenting fraudulently obtained information to regulatory authorities with the intent to specifically harm Plaintiff's business operations through deception and manipulation of legal procedures, connected to the underlying torts of fraud (La. Civ. Code art. 1953), unfair trade practices (La. R.S. 51:1405), and abuse of rights

102.    The regulatory complaints filed by Defendants were objectively baseless, made in bad faith, and relied on fabricated evidence and false identities, as detailed above. The Defendants acted with the specific intent to defraud Plaintiff through false representations and interfering with their business relationships and business operations.

103.    In furtherance of the conspiracy, Defendants committed overt acts, including but not

limited to submitting fraudulent information through Greater Guide's ASP website, and filing objectively baseless and malicious complaints with numerous State mental health regulatory boards to injure Plaintiff and the valuable business relationships with its health providers.

104.    As a direct and proximate result of the Defendants' conspiracy and overt acts, Plaintiff has suffered damages, including but not limited to lost revenues, terminated contractual relationships with service providers, and costs associated with attracting and training new mental health providers.

105.    As a result of the above actions, Defendants are jointly and severally liable for the damages caused by the conspiracy and the overt acts committed in furtherance thereof.

106.    By reason of the foregoing, Plaintiff seeks relief for compensatory damages, costs, permanent injunction and such other relief as this Court deems just and proper.

## COUNT II – FRAUD

107.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

108.    Under La. C.C. art. 1953, fraud is a misrepresentation or suppression of the truth made with the intent either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.

109.    Defendant Unknown Investigator, at the direction and control of Defendants, knowingly and intentionally made material misrepresentations by creating fraudulent customer accounts, using false names, addresses, and payment information, and submitting false medical assessments to mental health providers through Greater Guide's ASP website in violation of 18 U.S. Code § 1035 (Federal criminal statute criminalizing "False Statements Relating to Healthcare Matters").

110.    These misrepresentations were made with the intent to induce Plaintiff and its IMHPs to provide services under false pretenses, to obtain confidential business and healthcare provider

information not otherwise available to Defendants, and to create a pretext for filing objectively baseless regulatory complaints.

111.   The actions of Defendant, Unknown Investigator John Doe, at the direction and control of the other Defendants, were undertaken with the intent to deceive Plaintiff and to obtain an unjust advantage, specifically obtaining the name and information of Plaintiff's mental health providers, to undermine Plaintiff's credibility with its contracted mental health providers, and to enact the scheme of injury on Greater Guide's business relationships and operations to achieve competitive advantage for the Defendants in the marketplace.

112.   Defendants engineered their deception to bypass Greater Guide's reasonable levels of diligence, security and verification, (by, *inter alia*, using residential properties that had been recently placed on the market for sale) to obfuscate the Plaintiff's otherwise effective due diligence/verification measures and present seemingly valid credit card processing information. Thus, the truth about the Defendants' fake scheme was not discoverable "without difficulty, inconvenience, or special skill" (See, La. Civ. Code art. 1954)

113.   Plaintiff reasonably relied on Defendant's misrepresentations, as the fraudulent accounts and requests appeared to be legitimate customers seeking services. The filing of board complaints was the intended consequence of fictitious identity scheme, not an independent act. As a result, Plaintiff suffered damages, including but not limited to remedial actions, severe reputational harm, loss of business relationships causing financial loss, and injury to business operations.

114.   Defendants are vicariously liable for the acts of their Unknown Investigator(s) pursuant to Louisiana Civil Code Article 2320, as Unknown Investigator acted at the direction and control of Defendants and in the course and scope of their business engagement with Defendants.

115.   By reason of the foregoing, Plaintiff seeks relief for compensatory damages, costs, and

such other relief as this Court deems just and proper.

## COUNT III - BREACH OF CONTRACT

116.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

117.    Pursuant to Louisiana Civil Code Article 1927, Defendant John Doe Unknown Investigator, by actively engaging with the ASP website features and continuing to utilize its services after having reasonable access and clear visibility to the Terms and Conditions, and did provide consent to be bound by such terms upon purchase by proceeding with the transaction, as John Doe Unknown Investigator knew or should have known of the Terms and Conditions of continued access of the ASP website.

118.    The section entitled "Registration and Password" of the Terms and Conditions is a material covenant of the Terms and Conditions and use of the Greater Guide services. Defendants breached this section of the Terms and Conditions by supplying aliases, false demographic data, and false answers to medical evaluations forms in at least thirty-one transactions.

119.    Defendant Unknown Investigator's acceptance was legally binding and sufficient to establish a contract under Louisiana law, wherein the provisions were not hidden but were instead made sufficiently conspicuous to alert a reasonable user. Therefore, any breach of these agreed terms by the investigator constitutes a breach of contract, actionable under the laws of this state.

120.     John Doe Unknown Investigator(s) acted as Defendants' mandatary when registering each account and assenting to the ASP website Terms & Conditions; accordingly, under La C.C. art. 2985 and La C.C. art. 3021, Defendants are bound by—and liable for—the contractual breaches committed within that mandate and under their direction and control.

121.    Plaintiff reasonably relied on Defendant's acceptance of the ASP website Terms and Conditions in providing services, and, because of Defendants' breach, suffered damages,

including but not limited to severe reputational harm, loss of business relationships causing financial loss, and injury to business operations.

122.   By reason of the foregoing, Plaintiff seeks relief for compensatory damages, costs, and such other relief as this Court deems just and proper.

### COUNT IV – COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

123.   Plaintiff repeats and realleges the foregoing as if fully set forth herein.

124.   At various times between approximately January of 2023 and September 30, 2024, Defendants accessed, used, or caused to be accessed or used Plaintiffs' Servers without authorization to obtain medical services and confidential business information under false pretenses on approximately thirty-one separate instances.

125.   Plaintiff's Servers are deemed "computers" as defined by 18 U.S.C. §1030(e)(1) are "protected computers" as defined by 18 U.S.C. §1030(e)(2)(B) because they are "used in or affecting interstate or foreign commerce or communication."

126.   Defendants violated 18 U.S.C. §1030(a)(2) because they intentionally accessed and caused to be accessed Plaintiffs' protected computers, without authorization and, on information and belief, obtained information that Defendants were not entitled to obtain.

127.   Customers cannot reach the tele-health API endpoint/provider/queue unless they (1) complete an evaluation, (2) input valid credit card data, (3) agree to Terms and Conditions by submitting their profile and evaluation, and (4) receive an order-ID token. These steps are both contractual and technological barriers, which the Defendants fraudulently bypassed.

128.   Defendants' access was not authorized because it was obtained through the use of false identities, fraudulent addresses and zip codes, and circumvention of technical and contractual barriers designed to prevent such access. Defendants violated 18 U.S.C. §1030(a)(4) as they knowingly and with intent to defraud accessed and caused to be accessed Plaintiffs' protected

computers and without authorization, and by means of such conduct furthered the intended fraud and obtained something of value. Defendants' fraudulent conduct included:

    a.  Creating fraudulent customer profiles using fictitious names, birthdates, and addresses;

    b.  Falsely agreeing to the American Service Pets terms and conditions;

    c.  Entering falsified billing information to simulate legitimate transactions;

    d.  Sending unauthorized commands to Plaintiffs' computers and concealing the commands as legitimate network traffic; and

    e.  Submitting fraudulent medical evaluations through Plaintiffs' system to induce mental health providers into providing services under false pretenses.

As a result of the Defendants' fraud, Defendants obtained patient ID numbers as confirmation that services would be rendered, thereby furthering their fraudulent scheme to disrupt Plaintiffs' business, the value of such disruption exceeding $5,000.

129.   Defendants violated 18 U.S.C. §1030(b) by conspiring and attempting to commit the violations alleged in the preceding paragraphs.

130.   Defendants' conduct caused a loss to Plaintiffs in excess of $5,000 during a one-year period.

131.   Defendants' actions caused Plaintiffs to incur a loss as defined in 18 U.S.C. §1030(e)(11), including but not limited to costs associated with identifying and responding to fraudulent activity, enhancing security measures, and addressing harm to business operations.

132.   Plaintiffs are entitled to be compensated for losses and damages, and any other amount to be proven at trial.

**COUNT V - ABUSE OF RIGHT**

133.   Plaintiff repeats and realleges the foregoing as if fully set forth herein.

134.   An "abuse of right" refers to an action that may appear as a legitimate exercise of a personal

34

right, yet lacks protection from the courts due to its primary intent to cause harm; its execution without a genuine and valid interest; or its contradiction to principles of good faith or moral standards. La C.C. Art. 2315 and *Illinois Central Gulf Railroad Co. v. International Harvester Co.*, 368 So. 2d 1009 (La. 1979).

135.    In the Defendants' complaints to regulatory boards in Louisiana, Texas, Washington, Arizona and other States yet known regarding information obtained through fraudulent inducement and to create the environment for the complaint, Defendants acted with the predominant intent to harm Plaintiff, as evidenced by their retaliation to SAPS' failed lawsuit, and by the fraud committed in order to carry out their complaints to numerous State regulatory boards.

136.    Defendants' actions provided no legitimate benefit to Defendant, as the actions to fabricate evidence through fraud only served to benefit SAPS at the detriment of Plaintiff and other competitors.

137.    Defendants' conduct violated principles of good faith and fairness, as the complaints filed with multiple State regulatory boards against Plaintiff's contracted service providers, the mental health providers, was done with the intent to damage the business relationships between Plaintiff and its service providers and obstruct and injure Plaintiff's business operations in the target State.

138.    Defendants exercised the right for a purpose other than that for which it was granted, as Defendants exercised the right to file such complaints using evidence obtained through fraudulent inducement in order to pursue their scheme to defraud and injure Plaintiff and other competitors of SAPS.

139.    As a direct and proximate result of Defendants' abuse of right, Plaintiff has suffered damages, including but not limited to lost revenues, terminated contractual relationships with

35

service providers, costs of contracting and training new mental health providers, among other damages, and Plaintiff seeks relief in the amounts of those damages and for a permanent injunction against such actions of Defendants.

## COUNT VI - TORTIOUS INTERFERENCE WITH A BUSINESS CONTRACT

140.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

141.    Greater Guide maintains valid contractual relationships with licensed mental health providers who conduct evaluations and provide mental health services through Greater Guide's platform.

142.    Defendants, including Dominick Latino in his capacity as President and Director of Defendant PEI, knew of the existence of these contractual relationships through prior litigation and business dealings in the industry.

143.    Defendants intentionally and maliciously interfered with Greater Guide's contractual relationships by directing or participating in a coordinated scheme that included: (1) creating approximately 31 fraudulent customer accounts using the same credit card information; (2) submitting false evaluation information to mental health providers contracted with Greater Guide, and (3) the filing indiscriminate complaints with multiple state licensing boards using fraudulently obtained information to target Greater Guide's IMHPs regardless of jurisdiction.

144.    Defendants' interference was improper and without justification, as evidenced by the systematic use of fraudulent identities and credit card information, the coordinated filing of substantially similar complaints across multiple jurisdictions; and the use of Prevent ESA Fraud's purported nonprofit status to advance SAPS LLC's commercial interests.

145.    Defendants' conduct caused actual disruption of Plaintiff's contractual relationships, including the termination of multiple provider contracts, the cessation or curtailment of operations in several states, and the imposition of substantial business costs to recruit, vet, and

reestablish licensed mental health coverage in those jurisdictions, a direct and foreseeable result of Defendants' intentional conduct.

146.    Defendants' actions were willful, wanton, and malicious, undertaken with the specific intent to harm Greater Guide's business relationships with its contracted mental health providers.

147.    By reason of the foregoing, Plaintiff seeks relief in the amount of damages and equitable relief and a permanent injunction for such actions of Defendants in the future.

## COUNT VI - LOUISIANA DECEPTIVE AND UNFAIR TRADE PRACTICES

148.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

149.    Plaintiff incorporates by reference its fraud allegations which identify the specific transactions, dates, user aliases, payment methods, and complaint filings used to execute Defendants' deceptive scheme.

150.    The Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) makes "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce [...] unlawful" (La R.S. 51:1405(A)) and "§ 51:1409(A) grants a right of action to "[a]ny person, natural or juridical, who suffers any ascertainable loss" from a violation of this prohibition". *Cheramie Serv. v. Shell Deepwater*, 35 So. 3d 1053, 1059 (La. 2010).

151.    Defendants have engaged in unfair and deceptive trade practices to harm competitors through a fraudulent scheme in Louisiana and across the country, including unfair methods of competition and deceptive conduct with the intent to undermine Plaintiff's business relationships with licensed providers and customers through fraudulent access and reputational sabotage. As a direct consequence of such unlawful trade practices by the Defendants, Plaintiff has been and continues to be damaged, including the loss of revenues.

**152.**    Defendants have engaged in, but not limited to, the following unfair trade practices: (1)

creation of fraudulent customer profiles (deception); (2) leveraging falsified transactions to file baseless complaints in bad faith; (3) using Prevent ESA Fraud's false nonprofit veneer for commercial gain, which is an oppressive business act. Furthermore, Defendants' conduct violated LUPTA because it was (a) unethical in the commercial context, (b) deceptive by design, and (c) intended to damage Greater Guide's business operations through fraud, without legal justification. Such conduct constitutes an unfair and deceptive trade practice under Louisiana law.

153.    Through their actions, Defendants have engaged in unfair trade practices to disrupt and impair the business dealings of the Plaintiff and other competitors throughout the market.

154.    Because of the foregoing, Plaintiff seeks damages, equitable relief, and permanent injunction, and, under the LUTPA, is entitled to recover treble damages and reasonable attorney fees for Defendants' fraudulent or willful actions.

## COUNT VIII - VIOLATION OF SECTION 1 OF SHERMAN ANTITRUST ACT

155.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

156.    The coordinated scheme by SAPS LLC, Prevent ESA Fraud Inc., Prevent ESA Fraud, and associated individuals constitutes illegal acts under antitrust laws, specifically designed to monopolize the emotional support animal certification market, suppress competition, and manipulate market mechanisms.

157.    Alternatively, these actions have resulted in significant anticompetitive effects across the market by removing competitive pressure on SAPS LLC to improve their service offerings and maintain reasonable pricing. The artificial elevation of industry barriers and the manipulation of regulatory processes constitute unreasonable restraints of trade that adversely affect interstate commerce, violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

38

158.   Defendants' comprehensive strategy to restrain trade and monopolize the emotional support animal certification market through fraudulent conduct, abuse of regulatory processes, and deliberate interference with competitors' business operations constitutes a clear and egregious violation of Sections 1 and 2 of the Sherman Act.

159.   Because of the foregoing, Plaintiff seeks damages, equitable relief, and permanent injunction, and, under the Sherman Antitrust Act, is entitled to recover treble damages and reasonable attorney fees for Defendants' anticompetitive actions.

## COUNT IX - VIOLATION OF SECTION 2 OF SHERMAN ANTITRUST ACT

160.   Plaintiff repeats and realleges the foregoing as if fully set forth herein.

161.   At all pertinent times the Defendants operated within the Relevant Market.

162.   As described above, Defendants knowingly and willfully engaged in conduct designed to unlawfully obtain and extend their market share in the Relevant Market in an attempt to monopolize said Relevant Market.

163.   These actions included, among others (i) fabricating consumer profiles to infiltrate Plaintiff's platform, (ii) extracting confidential provider information, (iii) filing sham regulatory complaints against Greater Guide affiliated IMHPs to drive them out of the market, (iv) and redirecting displaced consumers to SAPS's own services at higher price points.

164.   Defendants' regulatory actions were objectively baseless due to *inter alia,* the use of fabricated patient identities, the absence of any genuine clinical harm, the reliance on Defendants' self-authored "Code of Conduct" rather than individualized state law, and the uniform targeting of Greater Guide IMHPs without any legitimate consumer complaint – demonstrating that the filings served no valid regulatory purpose and were instead calculated solely to exclude market rivals like Greater Guide.

165.    Defendants illegally attempted to create and maintain monopoly power in the Relevant Market in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

166.    Defendants' conduct in unlawfully attempting to obtain and maintain a monopoly in the market for ESA-PSA certification services injured Plaintiff in their business or property. Plaintiff was deprived of access to licensed mental health providers in multiple key states, the revenue and market share associated with ESA-PSA letter certification in those States, and the ability to fairly compete in keyword-based online advertising markets, all as a direct and foreseeable result of Defendants' exclusionary and deceptive conduct.

167.    Defendants' anticompetitive and unlawful conduct alleged herein has injured competition in the Relevant Market by attempting to obtain and maintain power to exclude competitors, reduce output, charge monopoly prices, reap monopoly profits and otherwise thwart competition in the Relevant Market.

## COUNT X - VIOLATIONS OF THE RICO ACT

168.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

169.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . " 18 U.S.C. § 1962(c)

170.    Each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in property."

171.    Defendants, SAPS, LLC, Prevent ESA Fraud Inc., Prevent ESA Fraud, Dominick Latino III, and John Doe Unknown Investigator (constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4). SAPS-PEF Enterprise operated as a distinct association-in-fact enterprise

40

with the shared purpose of suppressing ESA-PSA certification market presence through fraud, CFAA violations, and sham regulatory complaints. Each RICO Defendant is separately named as a "person" under 18 U.S.C. § 1962(c), while the enterprise refers to their coordinated structure, shared operational tools, and continuing objective. The enterprise is not a shorthand for the predicate acts; it is the unit of decision-making and execution through which Defendants carried out the racketeering pattern.

172.    The mail and interstate wire communications used in furtherance of Defendants' scheme to harm Plaintiff were the general mailing and electronic communications described above, consisting of interstate wire communications to submit fraudulent information through Greater Guide's website, and the interstate mailing of complaints based on information received through fraudulent means; plus other communications, of which records are in the sole possession of Defendants.

173.    These acts constitute predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, as Defendants knowingly used interstate communications to further their fraudulent scheme, thereby satisfying the pattern requirement under RICO.

174.    The fraudulent representations of Defendants were relied on by Plaintiff, as set forth herein, and by Plaintiff's independent mental health providers and potential customers, who provided services in reliance on the fraudulent statements.

175.    The actions of Defendants, as set forth in detail above, comprise a fraudulent scheme to unfairly harm SAPS' competitors, including Plaintiff, through fraudulent means and impede competition, using mail and interstate wire, as set forth with specificity above, and to unjustly enrich SAPS.

176.    Defendants, through their actions, have engaged in unfair trade practices in an attempt to disrupt and impair the business dealings of the Plaintiff and other competitors throughout the

market.

177.    Plaintiff Greater Guide suffered injury to their business and reputation, and damages, as set forth in detail above. Among objects of the scheme, Defendants' fictitious identity complaint scheme was designed to obtain:

    a.    the identities and licensure numbers of Greater Guide's IMHP network — intangible business assets protected as property;

    b.    order-ID numbers generated by ASP's website and ESA/PSA certification letters, which have standalone economic value as the keystone for Prevent ESA Fraud's fraudulent tester and complaint package; and

    c.    incremental revenues from consumers who, after Greater Guide's IMHPs resigned or were sanctioned, purchased ESA certification from SAPS—diverted earnings that constitute property.

178.    The unlawful acts described above have the similar intents, results, accomplices, victims, or methods of commission or are otherwise interrelated and not isolated incidents so as to effect a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1962(c), causing injury to Plaintiff as contemplated by 18 U.S.C. §1964(c), as set forth above, and pose a threat of continued criminal activity.

179.    Plaintiff is entitled to relief, including damages, treble damages, and reasonable attorney fees under the civil-RICO statutes.

## COUNT XI - RACKETEERING CONSPIRACY

180.    Plaintiff repeats and realleges the foregoing as if fully set forth herein.

181.    Defendants constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

182.    During the times relevant during this complaint, Defendants, SAPS LLC, Prevent ESA Fraud Inc, Prevent ESA Fraud, Dominick Latino III and Unknown Investigator(s) conspired

to conduct or participate in the racketeering enterprise through a pattern of racketeering activities in violation of 18 U.S.C. § 1962, causing injury to Plaintiff as contemplated by 18 U.S.C. §1964(c), as set forth above.

183.   As described above, Plaintiff alleges with specificity that each Defendant—SAPS, PEF, PEFI, Dominick Latino, and John Doe Unknown Investigator—knowingly agreed to the common purpose of damaging competitors in the ESA-PSA certification services market through unlawful access, data harvesting, and / or regulatory sabotage. Plaintiff further alleges that each Defendant agreed to and facilitated the commission of at least two predicate acts of mail or wire fraud in furtherance of the enterprise.

184.   Plaintiff is entitled to relief, including damages, treble damages, and reasonable attorney fees under the civil-RICO statues.

## JURY DEMAND

185.   Plaintiff demands trial by jury of all issues so triable.

## RESERVATION OF RIGHTS

186.   Plaintiff expressly reserves the right to seek additional or alternative remedies, as may be warranted by the evidence adduced or as permitted by law. Plaintiff further reserves the right to amend or supplement its claims for damages and remedies as discovery proceeds or as additional facts become known.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.  On Count One, Defendants Civil Conspiracy, adjudging that Defendants are liable *in solido*

43

for the damages caused by the acts of Defendants against Plaintiff, damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

B. On Count Two, including thirty-one (31) incidences of Fraud, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

C. On Count Three, Breach of Contract, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

D. On Count Four, Computer Fraud and Abuse Act, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

E. On Count Five, Abuse of Rights, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

F. On Count Six, Tortious Interference with a Business Contract, awarding damages in favor of Plaintiff, in an amount to be determined at trial, plus cost, attorneys' fees, the permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

G. On Count Seven, violations of Louisiana Unfair Trade Practices Act, that the Court adjudicate and decree that Defendants' coordinated fraudulent, deceitful, and anticompetitive actions constitute unfair trade practices and awarding damages in favor of Plaintiff, in an amount to be determined at trial, for trebles damages per LUPTA, plus cost, attorneys' fees, permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

H. On Count Eight, violation of Section 1 of the Sherman Act, that the Court adjudicate and decree

44

that Defendants' coordinated actions constitute illegal restraints of interstate trade and commerce in violation of Section 1 of the Sherman Act awarding damages in favor of Plaintiff, in an amount to be determined at trial, for trebles damages per the Sherman Act, plus cost, attorneys' fees, permanent injunction of such conduct, and any other equitable or legal remedies authorized by law and issue an injunction requiring the cessation of all fraudulent and anticompetitive activities and the dissolution of any fraudulent nonprofit entities used in furtherance of these activities.

I.  On Count Nine, violation of Section 2 of the Sherman Act, that the Court adjudicate and decree that Defendants' engaged in conduct in violation of Section 2 of the Sherman Act, 15 U.S.C. §2; that coordinated actions constitute an illegal attempt to monopolize the Relevant Market in violation of Section 2 of the Sherman Act awarding damages in favor of Plaintiff, in an amount to be determined at trial, for trebles damages per the Sherman Act, plus cost, attorneys' fees, permanent injunction of such conduct, and any other equitable or legal remedies authorized by law and issue an injunction requiring the cessation of all fraudulent and anticompetitive activities and the dissolution of any fraudulent nonprofit entities used in furtherance of these activities.

J.  On Count Ten, RICO Act violations, that the Court adjudicate and decree that Defendants' coordinated actions constitute violations of the RICO Act and awarding damages in favor of Plaintiff, in an amount to be determined at trial, for trebles damages per RICO Act, plus cost, attorneys' fees, permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

K.  On Count Eleven, RICO Conspiracy, that the Court adjudicate and decree that Defendants' coordinated actions constitute liability *in solido* and awarding damages in favor of Plaintiff, in an amount to be determined at trial, and for trebles damages per RICO Act, plus cost, attorneys'

fees, permanent injunction of such conduct, and any other equitable or legal remedies authorized by law.

L.  That Defendants, their officers, directors, agents, employees, successors, and any persons acting on their behalf be permanently enjoined from engaging in, continuing, or renewing the fraudulent schemes or any other actions with similar purpose or effect, and from adopting any practices, plans, programs, or devices with similar anticompetitive purposes or effects.;

M.  That Defendants, their officers, directors, agents, employees, successors, and any persons acting on their behalf be (i) permanently enjoined from creating or using any fictitious identity to access the ASP website,

N.  That this Court judicially dissolve and revoke the corporate charters of Prevent ESA Fraud Inc, incorporated as a Delaware nonprofit corporation, and Prevent ESA Fraud, incorporated as a Louisiana nonprofit corporation, pursuant to the Court's inherent equitable powers and in furtherance of the public interest.

O.  Granting Plaintiff such other and further relief as the Court deems just and proper; and

P.  That Plaintiff recover the costs of this action, including reasonable attorneys' fees, and any other damages determined by the Court.

Dated: JUNE 17, 2025

NEW ORLEANS, LOUISIANA

Respectfully submitted,

**LABORDE LEGAL GROUP, LLC**

*/S/ Vincent J. Trombatore, Esq*
**Vincent Trombatore, Esq. (LBN: 35355)**
Vincent@LabordeLegal.com
Trial Attorney

**Garrett P. LaBorde, Esq. (LBN: 28111)**
Garrett@LabordeLegal.com
1615 Poydras St, Ste. 900.

New Orleans, LA 70112
P:  (504) 208-4554
Secondary email:
admin@LabordeLegal.com
***Attorneys for Plaintiff Greater Guide***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing was filed electronically via the US District Court for the Eastern District of Louisiana Document Filing System on this the **20th** day of **June**, 2025 requesting that a true and correct copy be served upon opposing counsel, Ted Le Clercq and Duris Lee Holmes, representing Defendants SAPS, LLC, Prevent ESA Fraud Inc, Dominick Latino III and Prevent ESA Fraud and all parties/attorneys of record pursuant to the Federal Rules of Civil Procedure.